Derek A. Jordan
Barnes Law
601 S. Figueroa St., Ste. 4050
Los Angeles, CA 90017
Tel: (310) 510-6211/ Fax: (310) 510-6225
E-mail: derekjordan@barneslawllp.com

Attorney (*Pro Hac Vice*) for Defendant
Jonathan Folker

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 3:19cr0047-JAJ |
| Plaintiff, | ) | **DEFENDANT'S SENTENCING MEMORANDUM** |
| vs. | ) | |
| JONATHAN FOLKER, | ) | |
| Defendant. | ) | |

COMES NOW Jonathan Folker, the Defendant in the above styled and numbered cause, fully humbled, fully cooperative, and having a desire to fully repay his debt to society, moves this honorable Court to vary & depart from the United States Sentencing Guidelines to determine a reasonable sentence of just deserts that inspires confidence in the criminal justice system amongst all, as articulated under *United States v. Booker*, 543 U.S. 220 (2005), 18 U.S.C. §3553(a), the Due Process and Equal Protection Clauses, and progeny flowing from all.

**I.    SUMMARY**

The only issue left before the court is determining what sentence would be *sufficient*, but no greater than necessary, to meet the goals of 18 U.S.C. § 3553. Pursuant to *Booker* and its

progeny, the Court must impose a sentence that is not greater than necessary to satisfy the statutory purposes of sentencing and, to do so, must consider all of the characteristics of the defendant and circumstances of the offenses. If necessary, the court should reject advisory guidelines that are not based on national sentencing data and empirical research. *See United States v. Booker*, 543 U.S. 220 (2005); *Rita v. United States*, 551 U.S. 338 (2007); *Gall v. United States*, 552 U.S. 38 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007); *Spears v. United States*, 555 U.S. 261 (2009); *Nelson v. United States*, 555 U.S. 350 (2009). The appropriate legal standard is to employ a "just deserts" approach to sentencing. "Just deserts" requires that: "**From the defendant's standpoint** the sentence should not be unreasonably harsh under all the circumstances of the case and should not differ substantially from the sentence given to another similarly situated defendant convicted of a similar offense under similar circumstances." (emphasis added). *United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010).

Under the facts and circumstances attendant to this case, the sufficient sentence necessary to meet the mandates and goals of 18 U.S.C. § 3553 is home detention, extended probation of 3 years or more and combined with community service and restitution in some fashion the Court deems appropriate. Such a sentence conforms to "similarly situated defendants" as well as "not unreasonably harsh" from "the defendant's standpoint," does not offend the Due Process and Equal Protection Clauses of the United States Constitution, yet compels the defendant to publicly restore what he took from the community by working to benefit society and the underprivileged, always subject to this court's control and power to revoke the probation and issue a full-length incarceration sentence. This effectuates concerns for restorative justice without imposing de-facto punishment on the taxpayer and community the defendant's behavior wronged, while also affording the defendant make up for his mistakes directly to that community.

**A.    THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AS WELL AS THE HISTORY AND CHARACTERISTICS OF JONATHAN FOLKER INDICATE THAT A SENTENCE INVOLVING PRISON TIME IS OVERLY HARSH.**

"[I]f ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance." *United States v. Adelson*, 441 F. Supp. 2d 506, 513–14 (S.D.N.Y. 2006). Courts recognize that a "truly extraordinary" charitable history serves as a basis for variance under 18 U.S.C. § 3553(a). *See, e.g., United States v. Howe*, 543 F.3d 128, 132 (3d Cir. 2008) (affirming a sentence of probation and three months' home confinement in a wire fraud case where the Guidelines range was 18–24 months but the defendant's life was marked by outstanding devotion to family, community, and church); *United States v. Thurston*, 544 F.3d 22, 26 (1st Cir. 2008) (affirming three-month sentence for Medicare fraud conspiracy of more than $5 million (Sentencing Guidelines recommended five years of prison time) based on, among other things, defendant's charitable work, community service, generosity with his time and support and assistance of others).

The Court has received ten letters from Mr. Folker's friends, acquaintances, professional colleagues and family attesting to his good character (character letters filed under seal per local rule, Dkt. 24). As reflected in those letters, Mr. Folker is not a greedy criminal as the government portrayed him as such but a man with no prior criminal record who got in over his head, lost his way, and now stands repentant and humbled. The letters attached to the memorandum speak to his friendship, loyalty, professional work ethic and positive community impact.

*1.    PRE-SENTENCE REPORT AND GUIDELINE CALCULATIONS*

Mr. Folker's character, repentance, and full cooperation during the pendency of these charges—things the Court will not have an opportunity to fully appreciate in a sentencing

hearing—is undoubtedly the reason that his family, friends, colleagues, and acquaintances, despite their awareness of the guilty verdict, have written to the Court affirming that they continue to trust and support him. The U.S. Probation Office has calculated an advisory guideline range of 18-24 months imprisonment, derived from a total Offense Level of 15, a criminal history category of 1, and after 3 points subtracted for acceptance of responsibility (Dkt. No. 16, Pgs. 12 & 17). This is based on a calculation of $256,783.71 for total tax liability and restitution (Dkt. No. 16, Pg. 11).

The defense believes that this number is an aggregated total, improperly including penalties and interest that pushes Mr. Folker from Zone C to Zone D to assure a harsher sentence. The Total Tax Liability of $256,783.71 includes $48,813.71 with the latter including some unknown amount of "additional interest" (Dkt. No 16, Pg. 11). Assuming the "additional interest" cited, but not revealed, is more than $6,784.71 then Mr. Folker should instead have a Total Tax Liability of less than $250,000, yielding an Offense Level of 13, zone C (given a criminal history category of 1, and after 3 points subtracted for acceptance of responsibility) with a guideline range of 12-18 months.

As noted, the IRS has added two sums, one including penalties and interest, to arrive at their tax liability for sentencing purposes. Penalties and interest should not be included in the tax loss for sentencing as that would effectively punish the defendant twice for the same crime. In this case the incentives are too perverse: not only does the IRS get to ask for more in repayment than what was withheld by the defendant's actions, but the IRS would also get to use that extra interest sum, a sum they will be repaid, to ask for harsher sentencing. Importantly, even the Criminal Tax Manual agrees that the Sentencing Guidelines state that interest and penalties are

excluded when assessing the penalty for tax evasion. See: U.S. Department of Justice, Tax Division, Criminal Tax Manual, 2012, Pg. 13.

Regardless of the amount of penalties and interest improperly included in the Total Tax Liability, the Guidelines are only advisory after *Booker* and it is within the sentencing court's discretion "to not dwell on the exact amount of the tax loss" as defined in the Guidelines. United States v. Suzuki, 180 F. App'x 751, 752 (9th Cir. 2006). Even if "the sentencing court were to adhere strictly to the Guidelines, the resulting tax-loss number is unlikely to bear more than a passing resemblance to the defendant's civil liability under the [IRS] Code."[1]

## 2. THE NATURE AN CIRCUMSTANCES OF THE OFFENSE

Mr. Folker understands that to prove his guilt under Count 1 (Tax Evasion) the government must prove, beyond a reasonable doubt the following elements: 1) an affirmative act of evasion (here, an estimate of total tax liability, Form 4868); 2) tax was due and owing for 2013; and 3) that he acted willfully.  Under Count 2 (Making and Subscribing a False Tax Return), Mr. Folker further understands the government must prove, beyond a reasonable doubt the following elements: 1) he made and subscribed a Form 1040 Individual Income Tax Return for Tax Year 2012 which was false as to a material matter; 2) the return was signed under penalty of perjury; 3) he did not believe the return to be true and correct as to every material matter; and 4) he falsely subscribed the return willfully, with intent to violate the law.

## 3. THE NATURE AND CHARACTERISTICS OF JONATHAN FOLKER

Without depreciating the seriousness of the crime, or of Mr. Folker's desire to take full responsibility, the evidence and defendant's history would show that absent this series of

---

[1] See: <u>IRS Cannot Add Interest and Penalties to Criminal Restitution Award</u> citing *Klein v. Comm'r*, 149 T.C. No. 15 (2017)

decisions, bad decisions that will forever alter Mr. Folker's life, Mr. Folker led a life that would be otherwise described as a "picked up by the bootstraps" story.

Mr. Folker grew up the son of a factory worker in a middle-class home in a stiflingly conservative Jehova's Witness family. He was the second of four children, with an older brother with mental health issues and a mother with various other physical ailments.

At barely 17 Mr. Folker struck out on his own. Jonathan denounced the overly conservative and restrictive nature of his family's religion, and without a high school diploma, entered the workforce. Mr. Folker learned to repair computers and progressed up through several technology companies finding himself more than adept at niche coding and IT work. In fact, Mr. Folker was sought after for his expertise while surrounded by others who were far more experienced and educated.

Around the age of 21, with a few years of successful experience under his belt and a resume to match, Mr. Folker began working with a small start-up web design firm where he first got behind on his taxes. There Mr. Folker misunderstood the import of the tax liability of a 1099 employee and found himself owing what seemed an insurmountable amount. As this company was mismanaged and floundering, and with growing personal debt, Mr. Folker left and began NERDWERX, the web design, hosting, and app development business, at issue here. (Dkt. 16, Pg. 3). Then in his mid-twenties, and with a small but growing company, Mr. Folker moved to Chicago to try his hand in a bigger market to grow and expand his company.

With increased success over the following years, and a proportionally growing tax bill, Mr. Folker did what could be expected of a certain type of single mid-twenties man without much education and a stiflingly restrictive childhood, who had developed a particular skill, but

left without real business knowledge or counsel: he spent money, often lavishly, and ignored the tax liabilities.  Mr. Folker essentially buried his head in the sand.

Almost a decade and a half later, Mr. Folker finds himself back at the beginning: a man with nothing but the knowledge that he has honed a particular technical set of skills, and having purged himself of most all remaining assets, is only left with his backbone to stand up and admit when he was wrong, very wrong.  He now stands asking to take responsibility, to repay his debt, and to move on with his life and build something out of the ashes of the life he burned by irresponsibility.

Mr. Folker has been fully compliant during the investigation and "clearly demonstrated acceptance of responsibility for the offense" while he "assisted authorities in the investigation or prosecution of [his] own misconduct". (Dkt. No. 16, Pg. 12). Mr. Folker is not a dangerous criminal with a history that would necessitate incarceration, having only a reckless driving conviction on his record. *Ibid*. In fact, the Probation Office correctly observed that Mr. Folker does not appear to be a danger to the public and has been fully compliant during his release awaiting sentencing on personal recognizance. Of note, Mr. Folker was diagnosed with Attention Deficit Hyperactivity Disorder, Depressive Disorder, and anxiety, traits that no doubt contributed to his crimes. (Dkt. No. 16, Pg. 14). Mr. Folker currently lives with family in a stable supporting environment.

### B. A REDUCED SENTENCE IS APPROPRIATE AND IN CONFORMITY WITH THE INTENT OF THE SENTENCING GUIDELINES.

The court has the duty to assess a punishment that considers the relative seriousness of the offense as well as one that is just in that particular case. *See* 18 USC § 3553 (a)(2)(A). The court must also impose a sentence that avoids unwarranted disparities among defendants with similar records who are convicted of similar criminal conduct. 18 U.S.C. § 3553(a)(6).

In 2019, sentences below the guideline range were imposed in over 74.2% of tax cases. *See* U.S. Sent'g Comm'n, *Quarterly Data Report*, *Preliminary FY 2019*, Table 10. Only 25.8% of all sentences imposed in tax cases were within the guideline range and *none* were above the guideline range. *Id*.

Of all defendants convicted of tax related offenses in 2019, over 35% did not receive a sentence of imprisonment at all, but instead were sentenced to either probation and confinement or probation only. *Id*. at Table 7. For the remaining offenders upon which a term of imprisonment was imposed, the average sentence received was 16 months while half received a sentence of 12 months or less. *Id*. at Table 6.

In fact, a January 2020 ruling out of the Eastern District of Pennsylvania illustrates that in even more egregious tax crimes, defendants are often sentenced to little or no prison time. In what was called "an example of sheer greed" where the defendant "lined his pockets through fraud", the president of Newell Rubbermaid was sentenced to *one* month incarceration and 12 months supervised release with a $210,000 fine, for filing a false tax return and travelling out of country to manicure his offshore accounts to avoid tax liability.[2]

A sentence of probation with confinement conditions is not only within the Court's authority but is also reasonable, sufficient, and not greater than necessary, particularly in tax cases for similarly situated, first time, nonviolent offenders, such as Mr. Folker, where the defendant has no criminal history, presents effectively little risk of recidivism, needs to stay in the workforce to repay restitution, and can contribute to the community outside of prison with

---

[2] See: https://www.justice.gov/usao-edpa/pr/former-president-newell-rubbermaid-sentenced-tax-fraud-related-offshore-asset

home-detention, family support and stable employment, under the court's extensive supervision with the power of incarceration for violations.

*Gall's* acknowledgement that imprisonment "may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment" appears to be one of the guiding factors behind the realization that the significant majority of all defendants convicted of tax related crimes receive a sentence below the guideline range, with a large proportion of those receiving no term of imprisonment at all. This must be taken into consideration to advance the objectives of 18 U.S.C. § 3553(a)'s "sufficient but not greater than necessary" limitations.[3]

### 1.    A DETERRENT TO FUTURE ACTIVITY

Mr. Folker's occupation and reputation with the local and professional communities have already been marred by his actions and the subsequent criminal consequences and stigma. His reputation, skill, and hard work will always be undermined by the shadow of the results of his criminal activity.[4] His indictment and the resulting embarrassment have certainly shaken any delusions about the seriousness of his behavior and at the same time they have removed any and all motivation to ever act in a criminal manner. In light of his proven history, Mr. Folker is not the type of individual that would disregard this

---

[3] Other statutes also direct a district court in sentencing a defendant. Under 18 U.S.C. § 3582, a sentence involving incarceration is subject to the following limitation: "The court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall […] recogniz[e] that *imprisonment is not an appropriate means of promoting correction or rehabilitation*." 18 U.S.C. § 3582 (emphasis added).

[4] The court could consider this in the totality of circumstances as an atypical way that a defendant has already suffered punishment. See *United States v. Anderson*, 533 F.3d 623 (8th Cir. 2008) ( "Other ways in which the defendant had suffered atypical punishment such as the loss of his reputation and his company"). This is particularly important as the court reviews the many reference letters that have been sent on Mr. Folker's behalf indicating his reputation in the community.

experience and ever act illegally again. Unlike many who are charged with similar crimes, Mr. Folker has given no indication in his past, present or future, that his major motivating force is greed. In fact, it could be argued that the activity illustrated here is in complete contradiction to his usual character.[5]

The individual before this court is not one with a dangerous criminal mind, and we ask that the court take his actions both pre and post indictment into consideration when deciding his punishment. He has complied with all conditions of bond without exception. He was not formally arrested in the present case and was given the opportunity to make an initial appearance in court without any detention. He appeared in court with only a summons intends to fully comply with any court requirements should he be granted probation. His ability and willingness to comply with court ordered direction is clearly documented in this case and should be relied on by this court in assessing future compliance.

2. *THE NEED OF THE SENTENCE IMPOSED*

Jonathan Folker has never been imprisoned. The sentence he receives from the Court will no doubt leave a significant impression on him. Any amount of time spent in probation would be a consistent reminder of his criminal status and would serve to remind him of the consequences of any future criminal activity. The court has the duty to assess a punishment that considers the relative seriousness of the offense as well as one that is just in that particular case. *See* 18 USC § 3553 (a)(2)(A). In assessing the relative seriousness of the

---

[5] Courts have affirmed sentences of probation based on the on finding that the defendant did not fit the profile of a particular type of criminal. Probation was granted in the case of a pedophile, who had no history of substance abuse, no interpersonal instability, was motivated and intelligent, and had the continuing support of his family *United States v. Autery*, 555 F.3d 864 (9th Cir. 2009). These are all favorable factors that are also present in the instant.

offense the court should also consider the possibility of full payment of restitution (frustrated and delayed unnecessarily should Mr. Folker be incarcerated), and the comparison to other similarly situated defendants. Mr. Folker will forever be a felon and his ability to generate income to make-whole his community and those he has harmed will be further diminished by any moment he is taken out of the work force. Mr. Folker has, and continues to, go to great lengths to liquidate any assets he has accumulated to make-whole his community and those he has harmed. Mr. Folker has a long road to right his wrongs, but that road can be made considerably shorter for those he has harmed, and those that love and support him, if the sentence imposed balances mercy and the directive to use his talents to repay those he has harmed.

## II.   CONCLUSION

For the reasons stated above, Defendant JONATHAN FOLKER respectfully requests that this Court impose a sentence of probation for a term that this Court feels would promote respect for the law and; to take into account the mitigating circumstances surrounding the commission of the offense as well as the continued support of his family and the community.

DATED: February 8, 2020

                                                Respectfully submitted,

                                          By:   /s/ Derek A. Jordan
                                                  DEREK A. JORDAN
                                                  Counsel for Jonathan Folker

                                                  Barnes Law
                                                  601 S. Figueroa St., Ste. 4050
                                                  Los Angeles, CA 90017

Tel: (310) 510-6211/ Fax: (310) 510-6225
E-mail: derekjordan@barneslawllp.com

## **CERTIFICATE OF SERVICE**

It is hereby certified the foregoing document was delivered through the Court's electronic filing and notice system (CM/ECF), or, as appropriate by sending of copy of the same by electronic mail to the following address:

Clifford R Cronk, III
Assistant U.S. Attorney
United States Attorney's Office - DAV
131 East 4th Street
Suite 310
Davenport, IA 52801
563-449-5415
Fax: 563 449 5415
Email: Cliff.Cronk@usdoj.gov


DATED this 8th day of February 2020.


/s/Derek A. Jordan
Derek A. Jordan, Esq.